Jesse S. Weinstein, Esq.
PA ID No. 330059
**Phillips & Associates, PLLC**
45 Broadway, Suite 430
New York, NY 10006
(212) 248-7431
 *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
--------------------------------------------------------------------------X
RADIYA BURTON,

                       Plaintiff,

          -against-

SONDER HOSPITALITY USA INC. and DARNELL
HARRIS, individually,

                      Defendants.
--------------------------------------------------------------------------X

**<u>VERIFIED</u>**
**<u>COMPLAINT</u>**

Plaintiff, RADIYA BURTON, by and through her attorneys, Phillips & Associates, PLLC,

complains of Defendants, upon information and belief, as follows:

## <u>NATURE OF THE CASE</u>

1.  Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.

    §2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S.

    §951, et seq., seeking damages to redress the injuries she has suffered as a result of being

    harassed and discriminated against by her employer on the basis of her sex, together with

    sexual harassment, creating a hostile work environment, retaliation, and constructive

    discharge.

## <u>JURISDICTION AND VENUE</u>

2.  The Court has jurisdiction pursuant to 42 U.S.C. 2000e et seq., 28 U.S.C. §1331, §1343, and

    supplemental jurisdiction thereto.

3. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Eastern District of Pennsylvania. 28 U.S.C. §1391(b).

4. On or about October 15, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

5. On or about April 26, 2022, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

6. This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

## PARTIES

7. At all times material, Plaintiff was and is a female resident of the Commonwealth of Pennsylvania, County of Philadelphia.

8. At all times material, Defendant SONDER HOSPITALITY USA INC. (hereinafter "SONDER") was and is a foreign for-profit corporation duly incorporated in the State of Delaware.

9. At all times material, Defendant SONDER was authorized to conduct, and does conduct business in the Commonwealth of Pennsylvania.

10. At all times material, Defendant SONDER was and is a hospitality group headquartered at 101 15th Street, San Francisco, CA 94103.

11. At all times material, Defendant DARNELL HARRIS (hereinafter HARRIS) was and is working for SONDER as a "Maintenance Worker."

12. At all times material, Plaintiff was an employee of Defendant SONDER.

## MATERIAL FACTS

13. On or about November 25, 2021, Plaintiff began working for Defendant SONDER as a "Hospitality Agent," earning $16.00 per hour.

2

14. Beginning in or around the middle of December 2021, Defendant HARRIS, began to sexually harass Plaintiff at work.

15. For example, on or about December 17, 2021, Defendant HARRIS asked to walk Plaintiff to one of Defendant SONDER's buildings. Plaintiff agreed because she wanted to maintain a friendly relationship with her coworkers.

16. During the walk, Defendant HARRIS asked Plaintiff, "Who do you live with?" Plaintiff responded that she lived with her mom, brother, and sister-in-law. Defendant HARRIS then asked, Plaintiff, "**Do you hear them having sex**? **Are *you* having sex**?" Plaintiff awkwardly replied, "No, I don't think about that," and she was silent for the remainder of the walk.

17. As another example, on about December 25, 2021, Defendant HARRIS and another maintenance worker, Mr. Cliett (first name currently unknown), followed Plaintiff when she walked into a studio apartment room in an existing AirBnB. Mr. Cliett blocked the door so Plaintiff could not leave.

18. Meanwhile, Defendant HARRIS walked toward Plaintiff until her back was against the wall, then placed one hand above Plaintiff's head and his other hand on Plaintiff's head.

19. Plaintiff feared that Defendant HARRIS and Mr. Cliett were going to sexually assault her, and she repeatedly asked them to leave the room. After Plaintiff continued to beg, Defendant HARRIS and Mr. Cliett eventually left the AirBnB.

20. On or about December 26, 2021, Plaintiff complained to Defendant SONDER's Senior Operations Manager, Kristina Dziedzic, about Defendant HARRIS' sexual harassment. Ms. Dziedzic instructed Plaintiff to write a statement about the incidents.

21. Later that same day, Plaintiff had a Zoom call with Ms. Dziedzic, who told Plaintiff that

*she* would be moved to another work location due to her complaint of sexual harassment.

22. Plaintiff became upset and she told Ms. Dziedzic that she did not want to relocate because *she* was the victim of sexual harassment. Plaintiff also explained that relocating would add an additional hour to her commute to work.

23. Around that same time, Ms. Dziedzic told Plaintiff that Defendant HARRIS would be moved to another work site, pending the company's investigation.

24. In or around the end of December 2021, Plaintiff learned from Hospitality Agent, Janae (last name currently unknown), that their co-workers had been spreading rumors that Plaintiff was "causing trouble" because of her complaints of sexual harassment. Plaintiff did not address the rumors, because she was instructed by Ms. Dziedzic not to discuss the investigation.

25. On or about January 3, 2022, Defendant SONDER's Human Resources (HR) Generalist, Micha Brown, called Plaintiff via Zoom videoconference to discuss the incident. Ms. Brown told Plaintiff that she would launch an investigation into the allegations.

26. Ms. Brown assured Plaintiff that "proper precautions" would be taken, and that Defendant HARRIS would be moved to a different work location. This "assurance" never materialized.

27. Additionally, Plaintiff never heard from Ms. Brown again regarding the investigation.

28. The next day, Plaintiff telephoned Ms. Dziedzic and inquired about the status of the investigation into her sexual harassment complaint against Defendant HARRIS. Ms. Dziedzic informed Plaintiff that the investigation was closed and there was nothing Defendant SONDER could do because there was no "proof" of the sexual harassment.

Ms. Dziedzic assured Plaintiff that she would not have to work with Defendant HARRIS.

29. However, in or around the beginning of January 2022, despite Ms. Dziedzic's prior assurance, Plaintiff learned that Defendant HARRIS was back at her work site.

30. Plaintiff's supervisor, Suzette Andrews, assigned Plaintiff to meet with a client while Defendant HARRIS was present in the area.  Plaintiff panicked when she realized that she would need to work around Defendant HARRIS, so she did not meet with the client as instructed.

31. Ms. Andrews' supervisor, Operations Manager, Taylor Ente, learned that Plaintiff did not meet with the client.  Ms. Ente was upset with Plaintiff, and asked her to explain why she refused to comply with directions.

32. Plaintiff explained the details of Defendant HARRIS' sexual harassment to Ms. Ente and Ms. Andrews.  Plaintiff also told Ms. Andrews that she was afraid of further harassment or retaliation from Defendant HARRIS.  Ms. Ente feigned surprise about the details of Defendant HARRIS' harassment, even though they had a close friendship.

33. Ms. Andrews told Plaintiff that she, and Ms. Ente, were unaware of the sexual harassment complaint.  As a result, Ms. Andrews said that she would speak to HR about re-opening the investigation into Defendant HARRIS.

34. Plaintiff also informed Ms. Andrews about the rumors circulating about her complaints of sexual harassment, and how this made her "trouble."  Instead of attempting to stop the rumors, Ms. Andrews simply told Plaintiff to ignore her coworkers.

35. On or about January 13, 2022, Ms. Andrews informed Plaintiff that she was performing her job well, and was succeeding at training her colleagues.  Ms. Andrews said that they

would cross-train Plaintiff with Supervisor, Chanda Bang, so that Plaintiff could be eligible for a promotion.

36. However, because of her close friendship with Defendant HARRIS, and Plaintiff's sexual harassment complaint against him, Ms. Ente told Ms. Andrews and Ms. Bang to remove Plaintiff from her newly assigned worksites. This hindered Plaintiff's ability to earn a promotion as a Senior Hospitality Agent, which instead went to a less-experienced employee, Ruya (last name currently unknown).

37. On or about January 27, 2022, Plaintiff's investigation into Defendant HARRIS was reopened.

38. In or around February 2022, the rumors among employees at Defendant SONDER surrounding Plaintiff became worse. For example, Janae told Plaintiff that other coworkers stated that Plaintiff was "asking for it (sexual harassment)" and was "provoking" Defendant HARRIS. Again, Plaintiff did not address the rumors because of the pending investigation.

39. Shortly after, Plaintiff complained to Ms. Andrews that the rumors about her were getting worse. Again, Ms. Andrews told Plaintiff not to worry about what her coworkers were saying.

40. In or around late February 2022 or early March 2022, Ms. Dziedzic notified Plaintiff that the second investigation into her sexual harassment claims had been closed, because Defendant SONDER could not substantiate Plaintiff's allegations.

41. Around this same time, Plaintiff rented a room through Defendant SONDER on her own time. This was a privilege that was available to all employees.

42. In or around the beginning of April 2022, in further retaliation for the two complaints

Plaintiff made against Defendant HARRIS, Ms. Ente asked Plaintiff to attend a meeting

with her and Maintenance Supervisor Neil (last name currently unknown).

43. During the meeting, Ms. Ente told Plaintiff that after she checked out of the rented room

in February 2022, there was damage found in the room in the form of a broken bathtub.

Plaintiff denied that there was any damage done to the room.

44. Ms. Ente told Plaintiff that she would need to sign paperwork and reimburse Defendant

SONDER $500 for the damage to the bathtub.  Although this accusation was false,

Plaintiff nonetheless agreed to pay the $500 because she worried that she would lose

her job if she did not comply.

45. HR never contacted Plaintiff directly about the damage or the payment.

46. On or about April 19, 2022, Plaintiff was once again sexually harassed by Defendant HARRIS.

47. That day, Plaintiff overheard a group conversation between co-workers Danny

Colquhon, Dale Fluellen, and Kenneth Attaway.  **During the conversation**, **Defendant

HARRIS said that if he had the chance to sexually harass Plaintiff again**, **he would

do it**, **because her body was** "**too sexual**," **so she was** "**asking**" **to be approached

inappropriately**.  Mr. Colquhon, Mr. Fluellen, and Mr. Attaway agreed.

48. Defendant HARRIS also said that he lied during the investigation and told HR that he

did not sexually harass Plaintiff, but that Plaintiff, "**was asking for it**, **and** [**he**] **would

do it again**."

49. Then, in front of Defendant HARRIS, Mr. Fluellen, and Danny, Mr. Attaway falsely

**accused Plaintiff of asking him for sexual favors during a private conversation**.

Plaintiff intervened and denied Mr. Attaway's false accusation.

50. After overhearing this conversation, Plaintiff wrote a complaint and sent it to Ms. Dziedzic

and Ms. Bang.

51. After this incident, Plaintiff felt highly uncomfortable returning to work because of the potential of seeing Defendant HARRIS.  As a result, Plaintiff took the majority of her vacation days and missed work for most of the month of May 2022.

52. On or about May 20, 2022, Plaintiff received an email from Defendant SONDER's HR Programs and & Employee Relations Manager, Lindsay Jaworski, regarding the statement she submitted to Ms. Dziedzic and Ms. Bang.  Ms. Jaworski introduced herself, and informed Plaintiff that she would be handling the investigation into her complaint.  Ms. Jaworski scheduled a call with Plaintiff for May 23, 2022.

53. On or about May 23, 2022, Plaintiff had a Zoom call with Ms. Jaworski.  During the call, Plaintiff and Ms. Jaworski discussed her statement against Defendant HARRIS

54. Plaintiff did not return to work after this call.

55. On or about June 7, 2022, Ms. Jaworski informed Plaintiff that she "concluded the investigation" and she wanted to speak with Plaintiff and Ms. Dziedzic to discuss the outcome.

56. On or about June 9, 2022, Plaintiff arrived at the meeting to find only Ms. Dziedzic and HR Business Partner Kristen Coltman.  Ms. Dziedzic informed Plaintiff that Ms. Jaworski was no longer with the company.

57. During the meeting, Plaintiff learned that, once again, there was nothing that Defendant SONDER could do about Plaintiff's complaints, and she would be required to continue working with Defendant HARRIS.

58. Ms. Dziedzic told Plaintiff she had the option of returning to work immediately or taking a thirty (30) day leave of absence.

59. Plaintiff was upset by the outcome of the investigation, and by the idea of having to continue to work with her harasser, Defendant HARRIS.  So, Plaintiff decided to take the thirty- day leave from June 10, 2022, to July 9, 2022, with an anticipated return date of July 10, 2022.

60. However, due to a scheduling conflict, Plaintiff was instructed not to return until the following week.

61. On or about July 17, 2022, Plaintiff returned to work at Defendant SONDER.

62. However, the harassment and retaliation for her complaints of sexual harassment continued.

63. In fact, Ms. Ente began to create a pretextual paper trail of performance issues against Plaintiff in order to justify terminating her employment and/or constructively discharging Plaintiff.

64. On or about August 30, 2022, Ms. Ente called Plaintiff into a conference room to discuss her performance.  Operations Manager Vince (last name currently unknown) was also present.

65. Ms. Ente told Plaintiff her performance was suffering because she has been late to work during her prior two shifts.  Plaintiff explained that she was late on Monday because of issues with a flight she had taken over the weekend, and that day, her train had stopped on the way to work. Both instances were travel problems that were out of her control.

66. Ms. Ente also said that Plaintiff was not completing her tasks in a timely manner.  Again, Plaintiff knew this allegation was false.

67. Ms. Ente requested that Plaintiff sign a write-up outlining her alleged "performance issues." Plaintiff refused to sign the write-up because she disagreed with the accusations against her.

68. Plaintiff, upset by Ms. Ente's attempt to falsely discipline her, told Ms. Ente and Vince

that she needed to leave work for the day, and did so.

69. Plaintiff returned to work for her next shift and completed her job duties successfully.

70. However, Plaintiff noticed that Ms. Ente was going out of her way to monitor her.

71. Plaintiff was disturbed by constantly being surveilled, and knew Ms. Ente was trying to find

a reason to terminate her.

72. After months of undue stress, Plaintiff decided she could no longer tolerate the hostile

environment at Defendant SONDER that was created in retaliation for her complaints

of sexual harassment.

73. On or about September 9, 2022, Plaintiff emailed Ms. Dziedzic and Ms. Jaworski:

> "I am writing this letter as my form of resignation from my
> position as Hospitality Agent. Due to the work environment
> being toxic I will be resigning from my position. In
> December 2021 I was sexually harassed physically and put
> a claim in and nothing was done. In January through
> February 2022 my reputation was ruined on the job due to
> the harasser spreading rumors about me being a liar about it.
> In April 2022 I was verbally abused by 5 [Defendant
> SONDER] staff and put a complaint in and again nothing
> happened.
>
> It is with deep regret that I have to leave on such short notice
> and circumstances. From the time I returned in July back to
> work having to take leave due to the report put in about the
> verbal harassment in April. I have been picked on constantly
> by [Ms. Ente]. Via slack and in person she is constantly
> popping up at my locations at work asking me about my
> tasks. The people that I once talked to before I had to take a
> leave of absence now do not talk to me. I was accused of not
> being at work and pulled into a room by [Ms. Ente] and Vince
> after reporting that I would be late and my location on where
> I will be being late. I was told that I would be terminated for
> it again shall it happen again and I was told I had to sign a
> letter stating that those were my actions. I refused to sign
> and asked to go home. I returned back to work two days later
> and [Ms. Ente] once again consistent called me on Slack

asking me why I called out and popping up at locations I was working without my or the job's acknowledgment. I believe all of this is in retaliation for my complaints about sexual harassment. I feel harassed, out of place and unable to do my job because I am constantly anxious due to the treatment. On the morning call I am put on the spot about not being able to do the work of 3 people instead of pulling me aside or extending help. I am constantly feeling embarrassed. For my mental health, I need to resign immediately."

74. On or about September 9, 2022, Plaintiff was constructively discharged from Defendant SONDER.

75. Defendants would not have discriminated against Plaintiff but for her sex.

76. Defendants would not have harassed Plaintiff but for her sex.

77. Defendants would not have retaliated against Plaintiff but for her complaints of sex discrimination and sexual harassment.

78. As a result of Defendants' actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

79. As a result of the acts and conduct herein, Plaintiff has suffered and will continue to suffer, the loss of income, the loss of salary, bonuses, health insurance, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

80. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendants, jointly and severally.

**AS A FIRST CAUSE OF ACTION**
**UNDER TITLE VII**
**<u>DISCRIMINATION</u>**
**(Against the Corporate Defendants Only)**

81. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendant SONDER.  Plaintiff complains of Defendant SONDER's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

83. Defendant SONDER engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her sex, together with creating a hostile work environment and constructive discharge.

**AS A SECOND CAUSE OF ACTION**
**UNDER TITLE VII**
**<u>RETALIATION</u>**
**(Against the Corporate Defendants Only)**

84. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

86. Defendant SONDER engaged in an unlawful employment practice prohibited by 42 U.S.C.

§2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment, because of her opposition to its unlawful employment practices.

## AS A THIRD CAUSE OF ACTION
## UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT
## DISCRIMINATION

87.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88.  The Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, §5(a) provides that it shall be an unlawful discriminatory practice: "For any employer because of the… sex…of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract…."

89.  Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, together with sexual harassment, creating a hostile work environment, and wrongful termination.

## AS A FOURTH CAUSE OF ACTION
## UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT
## RETALIATION

90.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

91.  The Pennsylvania Human Relations Act, 43 P.S. §§951-963, §5(d) provides that "It shall be an unlawful discriminatory practice…for any person, employer, employment agency, or labor organization to discriminate in any manner against any individual because such individual has opposed a practice forbidden by this act, or because such individual has made a charge,

testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

92. Defendants engaged in an unlawful employment practice prohibited by the Pennsylvania Human Relations Act, §5(d) by retaliating against the Plaintiff because of her opposition to Defendants' unlawful employment practices.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in an unlawful employment practice prohibited by Title VII and the PHRA on the basis of Plaintiff's sex, together with sexual harassment, creating a hostile work environment, retaliation, and constructive discharge;

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices.

Dated: July 25, 2023
        New York, NY

By:    /s/Jesse S. Weinstein, Esq.
       **Phillips & Associates, PLLC**
       *Attorneys for Plaintiff*
       Jesse S. Weinstein, Esq.
       PA ID No. 330059
       45 Broadway, Suite 430
       New York, NY 10006
       P: (212) 248-7431
       F: (212) 901-2107